## Petition of Liberty Bell Lodge.

*Corporations—Charters of first class—Beneficial and protective organizations—Amendments to charter—Change of name—Subordinate lodges—Act of May 2, 1899, P. L. 160.*

1. A petition for an amendment of the charter of a beneficial and protective organization by having its name changed must be refused where it appears that prior to its incorporation the society had existed as an unincorporated body for a period of several years subject to the laws, rules and regulations of a certain fraternal organization, that after

its incorporation some controversy arose between it and the supreme lodge of the order, that some of its members and officers were endeavoring to transfer whatever corporate rights and franchises it possessed as a subordinate lodge to another fraternal organization by merely making application to the court for a change of name and that the petition presented in court asking for the amendment was signed by the officers and was under the seal of a subordinate lodge of such other fraternal organization.

2. When application is made to alter or amend the charter of a corporation it must appear that it is the act of the corporation in its corporate capacity, and not the act of individual members thereof, or of another organization.

3. Since the passage of the Act of May 2, 1899, P. L. 160, the change of the name of a corporation of the first class is to be treated as an amendment to the charter and the proceedings to accomplish this purpose are the same as if application were made to improve, amend or alter the charter in any other respect, and it is therefore not necessary to serve notice upon the auditor general before filing the petition in court asking that the name of the corporation be changed.

Argued Jan. 30, 1911.  Appeal, No. 359, Jan. T., 1910, by Liberty Bell Lodge No. 42, Order of Shepherds of Bethlehem, from decree of C. P. Lehigh Co., Jan. T., 1909, ordering a change of corporate name in Re Petition for Amendment of Charter of Liberty Bell Lodge, No. 42, Order of Shepherds of Bethlehem, certified to the Supreme Court by the Superior Court at No. 139, Oct. T., 1910. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ.  Reversed.

Petition for an amendment to a charter of a corporation of the first class.  Before Geo. W. Aubrey, Esq., as master.

The facts appear in the opinion of the Supreme Court.

The court decreed the amendment as prayed for.

*Error assigned* was the decree of the court.

*Milton C. Henninger*, with him *W. LaMonte Gillette*, for appellants.

*Claude T. Reno*, with him *Richard W. Iobst*, for appellees.

OPINION BY MR. JUSTICE ELKIN, March 20, 1911:

This proceeding was instituted in the court below for the purpose of securing an amendment to the charter of a beneficial and protective organization by having its name changed. The power of the courts to alter and amend charters of corporations of the first class, including the change of name, has been expressly conferred by statute. It was, therefore, within the jurisdiction of the court below to hear and determine the questions presented by this record. However, we are not convinced by an examination of the record that a prima facie case upon which to base a decree amending the charter of the corporation by changing its name, was made out. The charter name of the corporation which it is sought to have changed is "Liberty Bell Lodge No. 42, Order of Shepherds of Bethlehem." Prior to its incorporation it had existed as an unincorporated society for a period of several years subject to the laws, rules and regulations of the fraternal organization known as the Shepherds of Bethlehem. After its incorporation some controversy arose between the subordinate and supreme lodge of that order and while the nature of the controversy does not appear in this record, nor is it either material or important that it should, it does appear that some members and officers of the subordinate lodge undertook to transfer whatever corporate rights and franchises the subordinate lodge possessed to another fraternal organization known as the Shepherds of America, and this result was sought to be accomplished by simply making application to the court for a change of name. The petition presented in the court below asking that this thing be done is signed by the officers and is under the seal of Liberty Bell Lodge No. 6, Shepherds of America. In other words, upon the face of the record it appears that a subordinate lodge of the Shepherds of America, not yet incorporated under our statute, asks the court to amend the charter by changing the name of an incorporated subordinate lodge of a distinct and separate fraternal organization. This court has uni-

formly held that when application is made to alter or amend the charter of a corporation, it must appear that it is the act of the corporation in its corporate capacity, and not the act of individual members thereof. The petition in this case does not comply with this rule. Again, it is a general rule recognized by courts and by officers of the commonwealth having the power to alter and amend charters, not to exercise the power so as to change the original purpose for which the corporation was created. In the present case the effect of granting a change of name is to entirely change the original purpose for which the charter was granted. This cannot be done. As originally chartered, Liberty Bell Lodge No. 42 was a component part of the Order of Shepherds of Bethlehem, but if the change of name is allowed to stand it is intended by this simple process to make it a component part of the Shepherds of America. This changes the entire purpose of the original charter and we know of no authority to warrant such a result by a simple change of name.

We do not agree with the contention of appellant that it was necessary to serve notice upon the auditor general, as required by the Act of April 20, 1869, P. L. 82, before presenting the petition to the court. Such notice was required by that act and this court held, In re Application of First Presbyterian Church for Change of Name, 107 Pa. 543, that failure to serve the notice was fatal to such a proceeding. That case was decided in 1884 but since that time the Act of May 2, 1899, P. L. 160, was passed. This later act is a substantial re-enactment of the act of 1869, except that the provision requiring notice to be served upon the auditor general was omitted. This omission is significant, and as we view the two statutes, the intention of the legislature to re-enact the provisions of the act of 1869, omitting the proviso which required notice to be served upon the auditor general clearly appears. If this was not the intention of the legislature the act of 1899 served no purpose at all, in so far as conferring power upon courts to change the name of a corporation is concerned.

The act of 1899 gave this power in almost the same words as the act of 1869. As to corporations of the first class there is no reason or necessity for serving notice of change of name upon the auditor general. These corporations do not pay a state tax. They are not required to file reports in the office of the auditor general. The accounting officers of the commonwealth do not exercise any authority or supervision over corporations not for profit. The auditor general has no duty to perform in connection with the change of the name of this class of corporations. The records of his office are not public records in the sense of affecting the public, or those dealing with the corporation, with notice. Under such circumstances it was a vain and useless thing to serve notice of a purposed change in the name of a corporation of the first class upon the auditor general. Of course, when the legislature provided, as it did provide in the act of 1869, for the service of such notice before proceeding in the court of common pleas to have the corporate name changed, failure to observe the statutory requirement was held to be fatal to the proceeding. No doubt the legislature in passing the act of 1899, omitting the service of notice upon the auditor general, intended that thereafter this vain and useless service of notice would not be required. This intention is not left to mere inference because the act of 1899 provides that: "It shall be lawful for the several courts of Common Pleas of this Commonwealth to change the name, style and title of any corporation of the class named in the first section of this act within their respective counties with the same proceedings and in the same manner as they are now authorized to improve, amend or alter charters of such corporations." At the time of the passage of this act amendments to charters were made under the provisions of the Act of April 29, 1874, P. L. 73, as amended by the Act of April 17, 1876, P. L. 30. In other words at the time of the passage of the act of 1899, the authority to amend charters was found in the acts of 1874 and 1876, and this is the authority to which the act of 1899 refers.

Since the passage of the act of 1899 the change of the name of a corporation of the first class is to be treated as an amendment to the charter and the proceedings to accomplish this purpose are the same as if application were made to improve, amend or alter the charter in any other respect.  As to corporations, not of the first class, this view was clearly expressed by Chief Justice STERRETT in Fort Pitt Bldg. & Loan Assn. v. Bldg. & Loan Assn., 159 Pa. 308.  What was said by this court in that opinion as applied to corporations of the second class, applies with equal force as to corporations of the first class since the passage of the act of 1899.  We therefore hold that it was not necessary to serve notice upon the auditor general before filing the petition in the court below asking that the name of the corporation be changed.

For the reasons stated in the first part of this opinion we conclude that the change of name in the case at bar was improvidently made and that the assignments of error must be sustained.

Decree reversed and petition dismissed at the cost of appellee.