BENEVOLENT AND PROTECTIVE ORDER OF ELKS, Respondent, *v.* IMPROVED BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF THE WORLD et al., Appellants.

Injunction — corporate names — a membership corporation may maintain an action for an injunction restraining a similar corporation from using the same or a similar name.

1. The right to relief by injunction against the unfair and misleading use of a corporate name is not confined to business corporations.

2. The plaintiff was incorporated in 1871 by a special act of the legislature, under the name of the "Benevolent and Protective Order of Elks," "to protect and aid its members," and is authorized to acquire and hold real and personal property, to sell and dispose of the same, to have and use a common seal and to establish branch organizations, and now has branches in many other states and a large aggregate membership. The defendant was organized under the Membership Corporations Law in 1907, under the name of the "Grand Lodge of the Improved Benevolent and Protective Order of Elks of the World," but in its publications it appears as the "Improved Benevolent and Protective Order of Elks of the World." Its objects are similar to those of the plaintiff, and it has established branch organizations in this state and elsewhere. *Held*, that the names of the plaintiff and defendant are so similar as to be likely to deceive; that the judgment of the trial court

enjoining the defendant from in anywise using the word "Elk" or "Elks" as part of its title or incorporation should be sustained; but that the judgment should be modified by striking out the provisions prohibiting the defendant from using the same colors and the same titles for its officers as those used by the plaintiff.

*B. P. O. Elks* v. *Improved B. P. O. Elks*, 136 App. Div. 896, modified.

(Submitted May 9, 1912; decided May 24, 1912.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1909, which unanimously affirmed a judgment of Special Term enjoining and restraining the defendants from using the name "Improved Benevolent and Protective Order of Elks of the World" or any similar name and from adopting and using badges, buttons and colors similar to those in use by the plaintiff.

The facts, so far as material, are stated in the opinion.

*Anderson Price* and *D. Macon Webster* for appellants. Injunctions against the use of names are in protection of trade and traders only. (*Levy* v. *Walker*, L. R. [10 Ch. Div.] 447; *Du Boulay* v. *Du Boulay*, L. R. [2 P. C.] 430; *Day* v. *Brownrigg*, L. R. [10 Ch. Div.] 294; *Clark* v. *Freeman*, 11 Beav. 112; *Schuyler* v. *Curtis*, 147 N. Y. 434.) The names have not enough similarity to support this action. (*F. L. & T. Co.* v. *F. L. & T. Co.*, 21 Abb. [N. C.] 104; *International Trust Co.* v. *I. L. & T. Co.*, 153 Mass. 271; *Saunders* v. *S. L. Assur. Co.*, L. R. [1 Ch. 1894] 537; *Matter of U. S. Mortgage Co.*, 83 Hun, 572.) The injunction in no case can forbid the defendant from more than a colorable use of its name or a use without the words "independent" and "of the world." (*Devlin* v. *Devlin*, 69 N. Y. 212; *B. R. S. Co.* v. *B. R. Co.*, 149 Mass. 436.)

*Thomas F. Curran* for respondent. The injunction order was properly granted. (*Salvation Army* v.

*American Salvation Army,* 135 App. Div. 268; *Matter of Social Dem. Party,* 182 N. Y. 442; *International Committee* v. *Y. W. C. Assn.,* 194 Ill. 494; *G. H. C. Assn.* v. *O. C. Assn.,* 46 Ill. App. 281; *H. B. Co.* v. *H. T. B. Co.,* 40 Ill. App. 430; *Holmes* v. *H., B. & A. Mfg. Co.,* 37 Conn. 278; *M. D. Assn.* v. *D. M. Agency,* 25 Ill. App. 250.) The name "Improved Benevolent and Protective Order of Elks of the World" is substantially the same as the name "Benevolent and Protective Order of Elks." (*U. S. M. R. Co.,* 4 N. Y. Supp. 916.)

Willard Bartlett, J. This is a suit to restrain the defendant from using a corporate name so closely resembling that of the plaintiff as to be calculated to mislead and deceive the public and persons having transactions with either corporation. The plaintiff has been awarded the injunction which it sought, and upon a unanimous affirmance of the restraining judgment the defendant has appealed to this court. Although there are nominally two defendants, they constitute but one organization and will be treated as one defendant in this opinion.

The plaintiff was incorporated by a special act of the legislature (Laws of 1871, chap. 88) under the name of the Benevolent and Protective Order of Elks, "to protect and aid its members, and their families, and to accumulate a fund for that purpose, which said fund shall be used and appropriated for no other purposes whatsoever;" and it is authorized to acquire and hold real and personal estate to the value of $200,000, to sell and dispose of the same, to have and use a common seal and to establish branch organizations. The corporation has grown and prospered, being now represented by branches in many other states of the Union and having an aggregate membership of about 280,000 persons.

The defendant corporation, on the other hand, is of comparatively recent origin, having been organized

under the Membership Corporations Law in 1907. In the certificate of incorporation it is named the Grand Lodge of the Improved Benevolent and Protective Order of Elks of the World, but in its publications it appears simply as the Improved Benevolent and Protective Order of Elks of the World, the designation as Grand Lodge being omitted. Its objects as defined in the certificate are similar to those of the plaintiff, and it has established some branch organizations in this state and elsewhere. The evidence indicates that its membership is made up chiefly of colored persons, while the members of the plaintiff corporation and its branches are exclusively white. According to one of the witnesses for the defendant, "there is a membership of about 80,000 colored Elks in the United States." While the question of color crops up in the evidence in this record, it does not appear to have any legal significance in the litigation. The rights of the parties have been determined in the courts below, and must be adjudicated here precisely as though the members of both corporations were all of the same color.

The grievance of the plaintiff is that the defendant has pursued a course designed to mislead and confuse the public by a deceptive imitation of the plaintiff's name, seal, emblem, membership card and the titles of its officers. This grievance is established by the findings of the trial judge at Special Term and the unanimous affirm· ance thereof by the Appellate Division, which precludes us from considering any of the points of the appellant based upon the alleged insufficiency of the evidence.

There is one question of law, however, which may appropriately be discussed, since it does not appear ever to have been expressly passed upon by this court — and that is the right to injunctive relief against the unfair and misleading use of a corporate name in the case of a benevolent or fraternal association, where it is not carrying on any trade or industrial or financial business which can be injuriously affected by the action of a simi-

lar body in appropriating its name. The appellant strenuously asserts that the law protects only trading corporations against such misappropriation, and there are some expressions in the opinions of English judges which apparently sanction that view. That the doctrine finds no countenance, however, in this state is clearly and conclusively shown in the able opinion of the late Mr. Justice Patterson in *Society of War of 1812* v. *Society of War of 1812 in the State of New York* (46 App. Div. 568, 572), where it was distinctly held that the right to relief by injunction against the misuse of a corporate name was not confined to business corporations, but extended equally to benevolent and patriotic societies. He pointed out that many corporations are created under the laws of this state which have nothing to do with trade or commerce, and that " it would be a strange condition if the law could not protect them in that which it has encouraged them to do." His reasoning and conclusion commend themselves to our judgment and command our approval. (See, also, *Salvation Army in United States* v. *American Salvation Army*, 135 App. Div. 268, 274.)

The question has seldom been presented to courts of last resort, but the case of *International Committee of Young Women's Christian Associations* v. *Young Women's Christian Association of Chicago* (194 Ill. 194) is an authority to the same effect. The Young Women's Christian Association of Chicago was one of the large number of associations of women, incorporated and unincorporated, which have existed in this country during a long period and had been affiliated with one another through the agency of biennial conferences. It was organized in 1877. Its managing board was made up of representatives from nearly all the evangelical churches in Chicago, but no religious or sectarian test had been required of the voting and managing members except that they should be of Christian character. At one of the biennial conferences a movement was set on foot to

prescribe a more rigorous religious test, and finally those who favored limiting membership to women who belonged to evangelical churches formed a new organization, which was incorporated in 1891 under the laws of Illinois as the international committee of Young Women's Christian Associations. Local associations of the same character were formed under this new parent organization and much confusion arose on account of the similarity of its name to that of Young Women's Christian Associations generally and the implication that they were related to one another. It was manifest that the international committee, etc., was established solely by reason of the failure or refusal of the biennial conference to prescribe the evangelical test which has been mentioned. Under these circumstances, the Young Women's Christian Association of Chicago brought an action against the international committee of Young Women's Christian Associations to prevent it from using that name or any similar name likely to mislead or deceive the public; and judgment directing the issuance of an injunction to that effect was affirmed by the Supreme Court of Illinois.

The public policy of this state against permitting the use of misleading names by corporations of any character is evidenced by the legislation on the subject. Thus the General Corporation Law (Laws of 1909, ch. 28, § 6, as amended by Laws of 1911, ch. 638) provides that no certificate of incorporation of a proposed corporation having the same name as a corporation authorized to do business under the laws of this state, or a name so nearly resembling it as to be calculated to deceive, shall be filed or recorded in any office for the purpose of effecting its incorporation or of authorizing it to do business in this state. This provision is a substantial re-enactment of a section in the first General Corporation Law (Laws of 1890, ch. 563, § 4). Even more expressive of the legislative intent to repress the deceptive adoption of pre-existing corporate names is section 948 of the Penal Law,

originally enacted in 1908 (but which did not take effect until after judgment was rendered in this action): " No person, society or corporation shall, with intent to acquire or obtain for personal or business purposes a benefit or advantage, assume, adopt or use the name of a benevolent, humane or charitable organization incorporated under the laws of this state, or a name so nearly resembling it as to be calculated to deceive the public with respect to any such corporation. A violation of this section shall be a misdemeanor." In case of a threatened violation the section goes on to provide for an injunction; and if it shall appear that the defendant is in fact using the name of a benevolent, humane or charitable organization incorporated as aforesaid, or a name so nearly resembling it as to be calculated to deceive the public, an injunction may be issued " without requiring proof that any person has in fact been misled or deceived thereby."

The appellant insists that the names of the parties here have not enough similarity to support the action; and that in any event the judgment should not go further than to prohibit the use of the defendant's name without the prefix " Improved " and the suffix " of the World." We think that the names are so similar as to be extremely likely to deceive and that a limitation of the injunction in the manner suggested would not give the plaintiff the relief to which it is entitled. Indeed, the plaintiff's organization has become so well and widely known simply as Elks (as the trial court has found) that the assumption of a title containing that appellation by any other independent benevolent corporation or fraternal order would in and of itself convey the false impression that there was some connection between them. Therefore, the learned judge at Special Term was right in enjoining the defendant from in anywise using the word Elk or Elks as part of its title or incorporation. The case would be quite different if the members of the defendant organization had ever been members of the

30

plaintiff corporation and had seceded therefrom because of dissatisfaction with its methods of administration or for any other good and sufficient reason. In that event the representation that the members of the defendant were Elks or had been Elks would be true as matter of fact, and the use of the parent name as part of the name of a new society formed by members of the original organization as an offshoot thereof has sometimes been sanctioned. (See *Supreme Lodge Knights of Pythias* v. *Improved Order Knights of Pythias,* 113 Mich. 133.) Here, however, there has been no secession, and the defendant is in no sense an offshoot of the plaintiff association.

We think the judgment goes too far, however, in forbidding the defendant from using the same titles for its officers as those borne by the officers of the plaintiff. We can perceive no valid legal objection to the use of such titles as exalted ruler, esteemed leading knight, tiler, etc., by any association which chooses thus to designate its officials. This is a harmless imitation of the plaintiff, complimentary rather than otherwise. The prohibition against the use of the colors of the plaintiff corporation, to wit, purple and white, should also be stricken from the judgment. A case might arise in which the use of a particular combination or arrangement of colors ought to be forbidden, but no such general prohibition as this can be sanctioned.

The chief practical effect of the present judgment is to compel the defendant to adopt another name which contains no reference to the Elks. Its organization is not interfered with, and it may continue to exercise all its functions just as before. If its members desire the name of an animal, there is a long list of beasts, birds and fishes which have not yet been appropriated for such a purpose. It is only the virtual misrepresentation that they are Elks that is complained of here.

The judgment should be modified by striking out the

provisions in regard to the names of officers and the colors used by the defendant, and as thus modified affirmed, without costs.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and CHASE, JJ., concur.

Judgment accordingly.