# CHARLESTON.

THE MOST WORSHIPFUL GRAND LODGE OF ANCIENT FREE AND ACCEPTED MASONS OF WEST VIRGINIA *v.* MOST WORSHIPFUL PRINCE HALL GRAND LODGE OF WEST VIRGINIA, A. F. & A. M.

Submitted February 28, 1922.     Decided March 7, 1922.

1. FRATERNAL SOCIETIES—*Members Withdrawing from May Use Name Similar to that of Parent Order so Long as it Does Not so Closely Resemble as to Deceive.*

   Members withdrawing from a fraternal society and associating themselves together in a new organization for the accomplishment of the same purposes for which the old society was formed, may use as their new name any derivative of the old name they may wish to employ so long as it does not so closely resemble the name of the parent order as to be calculated to deceive ordinary persons proceeding with ordinary care.     (p. 426).

2. CORPORATIONS—*Use of Name Similar to Another—When Injunction Will Lie.*

   A corporation which adopts a name similar to another, but not of itself calculated to deceive, may nevertheless be enjoined from using it if it be shown that its officers and agents, by false representations and deceptive practices, are causing people to deal with it in the belief that they are dealing with such other concern.     (p. 427).

Appeal from Circuit Court, Mercer County.

Suit by the Most Worshipful Grand Lodge of Ancient, Free and Accepted Masons of West Virginia and others against Most Worshipful Prince Hall Grand Lodge of West Virginia, A. F. & A. M. and others.     From a decree dismissing its bill plaintiff prosecutes this appeal.

*Affirmed.*

*W. F. Denny* and *Sanders, Crockett & Sanders,* for appellees.

*J. M. Ellis* and *A. G. Froe,* for appellants.

RITZ, JUDGE:

The plaintiff seeks to enjoin the defendant from using as a part of its name the words "Ancient Free and Accepted Masons" or the letters "A. F. & A. M." or the word "Masons" or from using these terms in any way in conducting its affairs. From a decree dismissing its bill the plaintiff prosecutes this appeal.

Prior to the organization of the defendant the plaintiff "The Most Worshipful Grand Lodge of Ancient Free and Accepted Masons of West Virginia" was incorporated under the laws of this State. Its constituent elements were made up not of individuals, but of groups of individuals known as subordinate lodges. Prior to 1918 there were about forty of these subordinate lodges. Because of the conduct of some of its officers at a meeting held at Huntington in June, 1918, as well as for some other reasons a schism arose which reached such proportions that by the spring of 1919 more than a majority of the subordinate lodges withdrew from the plaintiff lodge and declined to further affiliate therewith. A number of the leaders of this schism were expelled from membership in the plaintiff lodge. In March, 1919, the withdrawing membership sent representatives to a meeting held at Huntington for the purpose of organizing another grand lodge of Masons to be composed of such subordinate lodges as desired to affiliate with it. Representatives from more than twenty lodges attended this meeting and it was there determined to form a grand lodge of Masons by the name of "Most Worshipful Prince Hall Grand Lodge of West Virginia A. F. & A. M." This determination was effected by procuring a charter from the Secretary of State and organizing in the manner provided by law. This suit was then brought by the plaintiff for the purpose of enjoining the defendant from conducting its business under the name adopted by it upon the theory that the plaintiff had the exclusive right to use the words "Ancient Free and Accepted Masons" or the letters "A. F. & A. M." as a part of its corporate name, that the defendant's corporate name is so similar to that of plaintiff as to be misleading and con-

fusing and an encroachment thereon, and that the defendant and its officers are actually practicing fraud upon the plaintiff by inducing persons intending to become members of the plaintiff to join the defendant under the belief that they were really joining the plaintiff.

That a court of equity will interfere to enjoin the use of a name by a corporation so closely simulating that of another corporation as to result in fraud upon such other is very well established. *Benevolent and Protective Order of Elks* v. *Improved Benevolent and Protective Order of Elks,* 205 N. Y. 459; *Supreme Lodge Knights of Pythias* v. *Improved Order Knights of Pythias,* 113 Mich. 133; *Emory* v. *Grand United Order of Odd Fellows,* 140 Ga. 423. There are many other cases affirming the doctrine, but denying the relief upon the facts in some cases and granting it in others. In the New York case above cited the relief was granted. The court found that plaintiff had given to the word "Elks" a distinctive meaning when applied to a secret benevolent order and that defendant might not use it. The court took occasion to say, however, that if the persons organizing the defendant corporation had been formerly members of the plaintiff and had split off from it because of a schism in the order, they would perhaps be as much entitled to use the word "Elks" as part of the name of a corporation organized by them for the purpose of carrying on the work of the order as would the plaintiff. The Michigan case above cited was one in which the only change in name was to change the word "Supreme" to the word "Improved" the new corporation being called Improved Order Knights of Pythias while the old corporation was known as the Supreme Lodge Knights of Pythias. In this case, however, the members of the new order had been members of the old having withdrawn therefrom because of dissatisfaction therewith and organized the new corporation for the purpose of carrying on the same work in which they had been engaged in the old. The attempt was made to enjoin the use of the term Knights of Pythias, but the court held that the new order might use any derivative of the old name so long as it was not calculated to deceive ordinary persons proceeding with

ordinary care, and the relief was denied.  That case is very much like the one we have here and we cannot say that the name of the defendant corporation is so similiar to that of the plaintiff as to deceive an ordinary person proceeding with ordinary care.   In a case in which there was no former connection between the members forming the new corporation and the old corporation, the adoption by such new corporation of a name closely resembling the name of the old is naturally attributed to some sinister purpose, but where the new corporation is organized by persons withdrawing from the old and for the purpose of promoting the very same objects, the adoption of a derivative from the old name, which is largely descriptive of the purposes sought to be attained accompanied by distinctive words, as a name for the new organization is not accompanied by any presumption of bad faith.  The adopted words in this case indicate the work in which they are engaged.  In English nomenclature they indicate to all, the uninitiated as well as the initiated, that the persons applying to themselves these terms are engaged in promulgating a principle of moral philosophy, having thousands of adherents among every civilized race of the world.  To say that only the plaintiff's membership may call themselves "Masons" in West Virginia. would be to give to it a monopoly in this great philosophical and moral principle, and no organization can ever secure a monoply in practical benevolence and morality.

The principal contention of the plaintiff, however, is that the defendant and its officers and agents are fraudulently inducing prospective members of the plaintiff to become members of the defendant's lodges; that many persons have joined the defendant organization in the belief that they were joining the plaintiff because of false representations made to them by the defendant's agents and that such fraudulent practices have been aided by the similarity in the names of the two organizations.  That one may be denied the right to use a particular name in the conduct of his business because of his fraudulent conduct and fraudulent use thereof to the prejudice of another is too well established to require the citation of authority.  When, however, we look

to the proof in this case we find that there has not been the slightest effort to produce confusion on the part of either party. As is usually the case in such instances, there seems to exist a rather exaggerated feeling of bitterness by each party toward the other, because of the claim of each that the other has departed from some of the established traditions of Masonry. This feeling has resulted in clearly setting forth the contentions of each side and in vividly portraying that in colored Masonry there are at least two distinct and separate organizations each claiming that the other is not orthodox. The evidence utterly fails to show any deception or fraud practiced upon the plaintiff, and the only injury that it has suffered, so far as appears from the evidence, has resulted from the withdrawal of a large number of its members because of dissatisfaction with its practices, and the organization of the defendant by these withdrawing members.

We find no error in the decree complained of and the same is affirmed.

*Affirmed.*